UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DOUGLAS YOUNG        :
    BUILDER, INC.,            :    No. 09-21940REF
        Debtor            :    Chapter 7

# STATEMENT IN SUPPORT OF SEPTEMBER 1, 2009 SUBSTITUTED ORDER GRANTING DEBTOR'S MOTION FOR CONTEMPT FOR VIOLATION OF AUTOMATIC STAY

## I. INTRODUCTION

In this matter, the corporate Debtor's landlord had actual knowledge that Debtor had filed a petition seeking bankruptcy relief. The landlord did not seek relief from this Court to permit him to exercise his rights. Nevertheless, the landlord changed the locks on the building less than two weeks after the filing of Debtor's bankruptcy. Upon Debtor's request, I ordered that a hearing for contempt against the landlord be scheduled on August 26, 2009. The landlord knew full well that Debtor was in bankruptcy; he acted to obtain possession of Debtor's premises; and he exercised control over property of the estate. The landlord's actions therefore constitute a willful violation of the automatic stay. I ordered at the hearing, as a sanction, that the landlord recompense Debtor for its actual damages of attorneys' fees in the amount of $2,000. Under the facts of this case, however, I did not find quite enough scienter to award punitive damages

1

against the landlord. This Statement contains my findings of facts and conclusions of law supporting both the Order entered on August 26, 2009 at the hearing and the attached substitute Order.

## II. PROCEDURAL BACKGROUND

Debtor, Douglas Young Builder, Inc., filed its petition in this case under Chapter 7 on July 30, 2009. Debtors' principals, Douglas G. Young and Joanne R. Young, his wife, also filed a petition for bankruptcy pursuant to Chapter 13 of the Bankruptcy Code.[1] Very little occurred in either bankruptcy for the first few weeks. The instant matter arose upon the filing by Debtor, on August 21, 2009, of its Motion for Contempt for Violation of the Automatic Stay and Request for Expedited Hearing. I granted the request for an expedited hearing and held the hearing on the Motion on August 26, 2009. At the close of the August 26, 2009 hearing, I entered a crossed out, interlineated, and scribbled written order granting the Motion. I noted at the hearing that I would follow up with a "clean" substitute order, which accompanies this Statement.

## III. FACTUAL BACKGROUND

The factual background of this matter is straightforward and is not in dispute. Debtor is a business company with office premises rented from Mr. Claude Mervine in Shillington, Pennsylvania. Debtor became delinquent in its payment of rent and failed to pay any rent after March 2009. Debtor filed its Chapter 7 petition in late

---

[1] The Chapter 13 case of Mr. and Mrs. Young is docketed at Case Number 09-21941REF.

2

July and immediately moved many business files and a couple desks from the premises to the home of Debtor's principal to wrap up Debtor's affairs. Debtor also removed from the premises its employees' personal goods and property. Remaining at the premises are electronic equipment (computers, copiers, fax machines), filing cabinets, desks, product displays, and some bank records.

Soon after Debtor filed its bankruptcy petition, Mr. Mervine learned about the bankruptcy filing from an employee of Debtor. Mr. Mervine spoke with his counsel some time after learning about the bankruptcy. At some time between very early August and August 14, 2009, Mr. Mervine changed the locks on the premises. When Debtor's counsel contacted Mr. Mervine's counsel and asked for a key to the premises, Mr. Mervine refused to provide it. He would allow Debtor's representatives access to the premises only if he accompanied them. This is also his position with the Chapter 7 Trustee.

Mr. Mervine changed the locks to keep the premises secure. The premises had never (during Debtor's tenure there) been the subject of any improper or illegal entry or break-in. Mr. Mervine intended to keep Debtor's employees out of the premises. He offered to be available to permit and supervise entry to the premises on a 24/7 basis. He felt that he was responsible for the security of equipment in the premises. Even after Debtor's counsel proved to Mr. Mervine and his counsel that Debtor had filed for bankruptcy protection, Mr. Mervine refused to give a key to Debtor, because he was

3

afraid that he would not control access to the building. He wanted to keep total control of the key.

Debtor's principal, Douglas G. Young, acknowledged that Mr. Mervine was a good landlord and was reliable. Mr. Young also had no reason to doubt Mr. Mervine when he offered 24/7 availability to Debtor.

## IV. DISCUSSION

Mr. Mervine defended himself from the sanction motion by claiming that he acted innocently, in ignorance of the law. As the time-worn clause concludes, however, that is not a legitimate excuse. The definitive decision in this District of liability and sanctions pursuant to Section 362(k) for violating Section 362(a) is In re Mu'min, 374 B.R. 149 (Bankr. E.D. Pa. 2007), written by my colleague Bankruptcy Judge Eric L. Frank. As did Chief Bankruptcy Judge Stephen Raslavich,[2] another colleague of Judge Frank and myself in this District, I will quote extensively from Judge Frank's Mu'min decision:

> D. The Debtor is Entitled to Damages Under 11 U.S.C. §362(k)
>
> The Debtor contends that she is entitled to damages under §362(k) because Penn's actions were "willful." The only damages requested by the Debtor are reasonable attorney's fees.
>
> Section 362(k) provides:

---

[2] Lightfoot v. Borkon (In re Lightfoot), 399 B.R. 141, 149-150 (Bankr. E.D. Pa. 2008).

4

"(1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
(2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages."

11 U.S.C. §362(k). Section 362(k) was formerly codified at §362(h). As a result of the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, Stat. 119 Stat. 23 (2005), subsection (2) was added to §362(h) and the provision was recodified as §362(k).

"Willful" has been defined as deliberate or intentional, In re B. Cohen & Sons Caterers, Inc., 108 B.R. 482, 485 (E.D. Pa. 1989). Conduct which violates the automatic stay is "willful" if a party acts with knowledge that a bankruptcy petition has been filed. In re Lansdale Family Restaurants, Inc., 977 F.2d 826, 829 (3d Cir. 1992) (citing In re University Medical Center, 973 F.2d at 1087-88). A "willful violation" does not require a finding of specific intent to violate the automatic stay. Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 320 n. 8 (3d. Cir. 2003); In re Atlantic Business & Community Development Corp., 901 F.2d 325, 329 (3d Cir. 1990) (citing In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989)). Rather, an action is willful if the respondent/defendant knew of the automatic stay and the conduct that violated the automatic stay was intentional. Krystal Cadillac-Oldsmobile GMC Truck, Inc., 337 F.3d at 320 n. 8.

In University Medical Center, the Court of Appeals recognized a limited exception to the general standard described above for "willfulness" under § 362(k) in its prior incarnation as § 362(h). A violation of the automatic stay may

5

not be a "willful" violation if a creditor's action is based on persuasive legal authority indicating that his or her actions do not violate the stay and the law on the issue is sufficiently unsettled. 973 F.2d at 1088. FN33[3] This principle has been characterized as a "good faith" exception to liability for violations of the automatic stay. See id. at 1089 (Becker, J., dissenting). FN34[4]

Exempting Penn from liability based on the "good faith" exception to liability articulated in University Medical Center is certainly a plausible result, even though there are competing interests. On the one hand, the significance of the automatic stay in the bankruptcy system is not debatable. Strong policy reasons exist to put the burden on a creditor to bring automatic stay issues to the bankruptcy court (rather than permitting the creditor to act unilaterally, thereby

---

[3]Footnote 33 in Mu'min follows: "In applying University Medical Center, some courts suggest the decision established a two-prong test for the exception to apply. See In re Montgomery Ward, LLC, 292 B.R. 49, 57 (Bankr. D. Del. 2003) (stating that University Medical Center good faith exception applied "where (1) the law on the issue is not settled, and (2) the defendant has persuasive legal authority indicating that his or her actions do not violate the stay"); cf. In re Mattera, 2007 WL 594908, at *7 (Bankr. D.N.J. Feb.21, 2007) ("Courts interpreting the exception are unclear about whether both persuasive legal authority and legal uncertainty are required, or whether just one suffices."); In re Hawk, 314 B.R. 312, 318 (Bankr. D.N.J. 2004) (recognizing the two-prong interpretation of Montgomery Ward, but neglecting to resolve issue because the creditors satisfied both prongs). Other courts, however, have not applied University Medical Center so mechanically. Rather, if the creditor had a legal justification for their actions, despite those actions being "willful," those courts denied damages. See In re Roche, 228 B.R. 102, 104 (Bankr. M.D. Pa. 1998) (concluding no damages were assessable for the creditor's willful violation of the stay because there "considerable amount of 'persuasive legal authority'" and that University Medical Center found an exception "where a creditor's actions are consistent with 'contemporaneous interpretations of Section 362'"); In re Rusnak, 184 B.R. 459, 466-67 (Bankr. E.D. Pa. 1995) (applying the University Medical Center exception to deny damages for a willful violation of the stay where there was an absence of case law to the contrary of the creditor's actions and the creditor relied on the Medicare Act and other related statutes to support its actions)."

[4]Footnote 34 in Mu'min follows: "Judge Becker's dissent in University Medical Center was based on his view that the existence of a 'good faith' exception to liability under then §362(h) had been previously rejected by the Court of Appeals in In re Atlantic Business & Community Development Corp."

compelling the debtor to seek judicial redress to enforce the stay or undo collection action). Penn's conduct in this case occurred undeniably with knowledge of both the bankruptcy filing and the Debtor's contention that withholding the transcript violated the automatic stay. These considerations militate in favor of applying only reluctantly and sparingly the "good faith exception" to liability which may exist after a judicial determination that the automatic stay has been violated; these considerations do not favor Penn's position. On the other hand, the justification that Penn offered for its conduct, that it was not a violation of the stay to withhold the transcript, was based on respectable ( i.e., persuasive) legal authority. And, I have no difficulty concluding that the issue involves "close and complex legal questions." University Medical Center, 973 F.2d at 1089.

I find it unnecessary to decide whether Penn has a defense to monetary liability under University Medical Center. After consideration of the BAPCPA amendment to §362(h) (now §362(k)) enacted in 2005, I conclude that University Medical Center was "legislatively overruled" by the BAPCPA and that, under current law, Penn has not stated a "good faith" defense to monetary liability in this case.

When University Medical Center was decided, there was no express, statutory good faith exception to liability for intentional actions taken in violation of the automatic stay with knowledge of the bankruptcy case set forth in then §362(h). As a result, University Medical Center can be considered as a judicial gloss on the text of the pre-BAPCPA Code, designed to effectuate a Congressional intent that conduct with a certain type of scienter (i.e., good faith) should not be subject to the damages remedy provided in §362(h) (now §362(k)).

In enacting BAPCPA, Congress modified the Code provision addressed in University Medical Center and expressly addressed the issue of good faith. In doing so, Congress provided for only a limited, statutory good faith

exception to the § 362(k) damage remedy. The express, statutory good faith exception is more limited than the one expressed in University Medical Center in two distinct ways: (1) the limitation applies only to good faith violations of § 362(h), which relates only to action taken in the good faith belief that the automatic stay has terminated because a debtor fails to perform his or her obligations under §521(a)(2) in a timely manner; FN35[5] and (2) it precludes only the imposition of punitive damages and in no situation restricts the imposition of "actual damages" for willful violations of the automatic stay.

With Congress having addressed the issue of a good faith exception to §362(k) liability expressly through the BAPCPA, the plain language of §362(k)'s exception does not encompass other types of arguably good faith conduct that Congress could have chosen to exempt from liability. FN36[6]

---

[5]Footnote 35 in Mu'min follows: "Section 521(a)(2) sets forth the debtor's obligation to file a "statement of intention" with respect to secured property and to perform that stated intention within thirty (30) days after the first date set for the meeting of creditors under §341. If the debtor fails to perform timely the §521(a)(2) obligations, §362(h) provides that the stay under §362(a) 'is terminated with respect to personal property of the estate or the debtor securing in whole or in part a claim, or subject to an unexpired lease....' Thus, if a creditor acts with the mistaken but good faith belief that the automatic stay has terminated under §362(h), §362(k) limits a debtor's remedy to actual damages. As stated in the text, this is now the only statutory good faith exception to liability in §362(k)."

[6]Footnote 36 in Mu'min follows: "See, e.g., U.S. v. McQuilkin, 78 F.3d 105 (3d Cir. 1996), cert. denied, 519 U.S. 826, 117 S. Ct. 89, 136 L. Ed. 2d 45 (1996) (doctrine of *inclusio unius est exclusio alterius* informs court to exclude from operation those items not included in list of elements that are given effect expressly by statutory language). The *inclusio unius est exclusio alterius* doctrine does not apply if an omitted item is not part of a "commonly associated group or series." See Perlin v. Hitachi Capital America Corp., 497 F.3d 364, 370-71 (3d Cir. 2007) (enumeration of items in one subsection of §707(a) did not exclude non-expressed items from a different subsection of §707(a) which were enacted for different reasons). In this case, I conclude that it is appropriate to apply the doctrine because the excluded item (a good faith exception to liability based on intentional action taken with knowledge of the bankruptcy case in reliance on case law) relates to the same subject matter as the included item (good faith exception to liability based on intentional conduct with belief that §362(h) is applicable). The Court of Appeals has also cautioned that the maxim does never override 'clear and contrary evidences of

Given this carefully constructed exception drawn by Congress, I conclude that University Medical Center is inconsistent with §362(k), insofar as the case held that a party is not subject to actual damages for voluntary acts taken with knowledge of the bankruptcy case in violation of the automatic stay when a party relies upon "persuasive legal authority" and the law on the issue is sufficiently unsettled. Because the standards of University Medical Center are not applicable and §362(k) does not bar the award of actual damages based on Penn's reliance prior reported court decisions, I find that the Debtor is entitled to the actual damages she has requested: reasonable attorney's fees.

In reaching these conclusions regarding the scope of the "good faith" exception to monetary liability under §362(k) and the absence of a meritorious "good faith" defense in this case, I am cognizant that there is no legislative history establishing conclusively that Congress intended to circumscribe the good faith exception under §362(k) in the BAPCPA or, if so, the particular reasons it chose to do so. However, given statutory text, the absence of a "smoking gun" in the legislative history of BAPCPA is immaterial. The starting point in statutory construction is the plain language of the statute and I perceive no ambiguity in §362(k). See Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000); accord, Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004); United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989); In re Price, 370 F.3d 362, 368 (3d Cir. 2004). Only if the statute is ambiguous or unclear should a court consider legislative history for interpretive guidance. Ross v. Hotel Employees and Restaurant Employees International Union, 266 F.3d 236, 245 (3d Cir. 2001).

---

Congressional intent.' Abdullah v. American Airlines, Inc., 181 F.3d 363, 373 (3d Cir. 1999) (quoting Neuberger v. Commissioner, 311 U.S. 83, 88, 61 S. Ct. 97, 101, 85 L. Ed. 58 (1940)). However, in this case, even if there were some ambiguity in the statute that would justify consideration of legislative history, there is no legislative history expressing clear evidence of a contrary Congressional intent."

> Further, I have no difficulty concluding that the result emanating from the application of the plain language of the statute is not absurd. In creating a remedy for the violation of a fundamental legal obligation in the bankruptcy process, Congress was free to make a policy choice as to how strictly the Code should impose liability for violations of §362(a). How Congress chose to navigate the continuum between "strict liability" and a broad "good faith" exemption from monetary liability was a legislative policy choice. The circumscribed good faith exception to liability now found in §362(k) simply represents its resolution of the competing policy interests. It is not the role of the courts to modify Congress' policy decisions as expressed in the plain language of a statute. Accordingly, the statute should be applied as it is written. See Lamie, 540 U.S. at 534, 124 S. Ct. at 1030.

In re Mu'min, 374 B.R at 169-70.

Many other decisions declare the same basic rationale or otherwise cite and rely on Mu'min. See, e.g., In re Seymoure, Civ. Action Nos. 07-4960(JAP) and 07-4967(JAP), 2008 WL 1809309, at *3 n.3 (D.N.J., April 22, 2008)(distinguishing Mu'min because the Court was applying pre-BAPCPA law and Mu'min was post-BAPCPA); In re Tezla, No. 08-12700DWS, 2009 WL 212542 at *2 - 3 (Bankr. E.D. Pa. Jan. 28, 2009); Lightfoot v. Borkon (In re Lightfoot), 399 B.R. at 148-50; In re Atlantic Medical Management Services, Inc., 387 B.R. 654, 662-63 (Bankr. E.D. Pa. 2008)(although the offending party might not have known about the pendency of the bankruptcy at the time he took debtor's property, he knew about it later and failed then to return the property); and In re Singer, 368 B.R. 435, 441 (Bankr. E.D. Pa. 2007).

In my prior unreported decision, Cortellessa v. Cortellessa (In re

Cortellessa), Adv. No. 06-2082REF, Case No. 05-14258REF, slip op. at 10-12 (Bankr. E.D. Pa., June 9, 2006), I ruled that a "willful violation" under Section 362(k) required only that the offending party knew of the automatic stay and intended to do what it did by acting intentionally. I relied upon Cuffee v. Atlantic Business and Community Development Corp., (In re Atlantic Business and Community Corp.), 901 F.2d 325, 329 (3d Cir. 1990), and noted that the offending party's good faith is not relevant. In Cortellessa, however, the non-debtor proceeded with the state court litigation only after asking for and obtaining an order actually granting relief from the automatic stay of Section 362. The Debtor interpreted the order to not permit certain portions of the litigation, while the non-debtor interpreted the order to permit all aspects of the litigation. Because of the reasonably differing interpretations of the Court's prior order, I awarded no sanctions against the non-debtor offending party.

## V. CONCLUSION

In this case, no such order granting Mr. Mervine relief from the automatic stay exists. Mr. Mervine simply took it upon himself to change the locks on the premises, thereby excluding Debtor from access to the premises. Moreover, and more critically, even after Mr. Mervine and his counsel were informed by Debtor's counsel that the bankruptcy in fact existed, they did not immediately surrender the new key to Debtor or to the Chapter 7 Trustee. They chose to insist that Debtor have only limited access to the premises. Mr. Mervine's actions would have been subject to sanctions as a "willful

violation" even under the pre-BAPCPA language of Section 362(h). The request by Debtor for the sanction of actual damages must be granted and I will do so.

The refusal of Mr. Mervine and his counsel to undo his changing of the locks after they were told by Debtor's counsel about Debtor's bankruptcy skirts the edges of constituting "appropriate circumstances" for awarding punitive damages pursuant to Section 362(k). Mr. Mervine's continued professed intention to merely protect the property in the premises and to permit access to the premises on a 24/7 basis, however, carried the day for me and I will not award punitive damages.

BY THE COURT

_____
Richard E. Fehling
United States Bankruptcy Judge

Date: September 1, 2009